THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA F.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 6387 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) | |
| Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**[3]

Before the Court is Plaintiff 's Linda F.'s motion and memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (Dkt. 10: Pl. Mot. in Support of Summ. J.: "Pl. Mem.") and Defendant's motion and memorandum in

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On November 21, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 7.)

support of summary judgment (Dkt. 15: Def. Mot. for Summ. J.; Dkt. 16: Def. Mem. in Support of Summ. J.: "Resp.")

I. **Procedural History**

Plaintiff applied for disability insurance benefits on January 9, 2020, alleging she became unable to work on January 7, 2020. (R. 205-11.) Her date last insured was March 31, 2025. (R. 29.) Plaintiff's claims were initially denied on January 22, 2021, and on reconsideration on August 21, 2021. (R. 81-95, 97-106.) She then appeared for a telephone hearing before ALJ Kevin Vodak on January 13, 2022. (R. 54-79.) Plaintiff, who was represented by an attorney, and a vocational expert testified.

On May 6, 2022, the ALJ issued a decision finding Plaintiff not disabled, and she subsequently appealed. (R. 196-98.)[4] After considering the parties' briefs and evidence, the Court grants Defendant's motion to affirm the ALJ's decision and denies Plaintiff's motion.

II. **ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since her onset date. (R. 31.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of systemic lupus

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

erythematosus/inflammatory arthritis, and diabetes mellitus. (R. 32.) The ALJ found that Plaintiff's polypoid mass of urinary bladder, obesity, neurodevelopmental disorder, and major depressive disorder were nonsevere. (*Id.*) Specifically with respect to her bladder polypoid mass, the ALJ noted that Plaintiff did not allege any limitations arising from the impairment. (*Id.*)

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 33.) In considering Plaintiff's mental impairments, the ALJ undertook the "Paragraph B" analysis for evaluating mental limitations. *(Id.)* The ALJ determined that Plaintiff had mild limitations in understanding, remembering, and applying information and concentrating, persisting, and maintaining pace and no limitations in interacting with others and adapting and managing herself. (*Id.*)

Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work except she was limited to frequent handling and fingering with the right hand. (R. 35.) Further, she could frequently balance, stoop, kneel, and crouch, and occasionally crawl. (*Id.*) She could frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds. (*Id.*)

At Step Four the ALJ found that Plaintiff could perform her past position as a food service worker. (R. 39.) Therefore, the ALJ found that Plaintiff was not disabled. (*Id.*)

**III.     Legal Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable

5

evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.  Analysis

Plaintiff argues generally that the ALJ did not support his determination of Plaintiff's residual functional capacity, most notably that she could perform light (as opposed to sedentary) work and frequently use her right hand. (Pl. Mem. at 9.) Separately, Plaintiff contends that the ALJ erred by relying on the vocational expert's improper classification of Plaintiff's past work and also by failing to accommodate her mild limitations in concentration, persistence, and pace. (*Id.* at 7, 13.)

### A.  Substantial Evidence Supported the ALJ's Determination of Plaintiff's Residual Functional Capacity.

The ALJ considered subjective and objective evidence in crafting Plaintiff's residual functional capacity. Notably, Plaintiff does not point to any evidence the ALJ ignored or overlooked with respect to her lupus or inflammatory arthritis. Instead, she contends that the ALJ should have credited her subjective allegations over the objective evidence or considered the objective evidence differently. But disagreement with the way the ALJ weighed the evidence is not a ground for remand. *Gedatus v. Saul*, 994 F.3d 893, 902 (7th Cir. 2021). In this case, Plaintiff does not carry her burden of proving that the ALJ erred at his determination of her residual functional capacity. To that end, the Court notes that the ALJ considered and discussed:

6

- Plaintiff's complaints of pain and weakness in her joints that predate her alleged onset date (R. 36.);

- Plaintiff's right middle finger joint surgery in December 2017 (*Id.*);

- Examinations showing normal gait, intact sensation, and full range of motion in all joints in January 2018, September 2019, and August 2020 (*Id.*);

- Tenderness and swelling of Plaintiff's right knee with reduced range of motion but normal X-rays in June and July 2020 (*Id.*);

- Plaintiff's report to a consultative examining doctor in August 2020 that she was not taking any pain medication or engaged in other treatment, that she had no problems with her activities of daily living, and that she had left her previous job because of Covid and not her impairments (R. 37);

- The consultative doctor's findings of arthritic changes in Plaintiff's third finger on her right hand but otherwise full strength and range of motion in all joints and normal gait. (*Id.*);

- Plaintiff's various complaints of pain in her left shoulder, neck, right ankle, right wrist, and knees between January to October 2021, with examination findings of tenderness, reduced range of motion, and reduced right grip strength. X-ray and ultrasound testing was negative. (*Id.*);

- Plaintiff reporting symptom improvement in November 2021 and January 2022 (R. 38);

- Plaintiff's testimony that she is not taking medication for any of her impairments including her diabetes (*Id.*);

- Plaintiff's reports of "flare ups" of pain in her feet and knees in April 2021 that made her unable to walk or move. Bloodwork at the time was negative for Lupus but markers were elevated. (*Id.*)

- Plaintiff's ability to perform activities of daily living independently, including bathing, dressing, driving, preparing meals, managing financial and organization tasks, completing household chores, and taking care of her grandchild. (R. 38.)

7

- Plaintiff's testimony that she could maintain attention for 30 minutes at a time, follow written and spoken instructions, and had no difficulty understanding money (R. 32-33); and

- An opinion by Vidya Madala., M.D., the consultative examining doctor at the reconsideration level, that Plaintiff could perform light work with frequent postural maneuvers and limited fingering on the right hand (R. 38.)

The above demonstrates that the ALJ supported the residual functional capacity with substantial evidence. Plaintiff argues generally that it is not clear "how" the ALJ arrived at his residual functional capacity determination, given Plaintiff's diagnoses. But a diagnosis does not equal a disability, and "a claimant must prove that specific functional limitations arise from his impairments." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) (holding that the claimant must prove impairments "imposed particular restrictions on her ability to work").

The Court is able to trace the ALJ's reasoning from the evidence he cited – examination results, Plaintiff's subjective complaints, her reported lack of treatment, medical opinions, and daily activities – to his conclusion that Plaintiff could work at the light exertional level with some non-exertional and right-hand limitations. Despite this evidence, Plaintiff nevertheless argues that the ALJ erred (1) by relying on "improper inferences to undermine Plaintiff's subjective claims," and (2) by wrongly rejecting the opinion of a treater (Pl. Mem. at 9.) The Court disagrees.

With respect to Plaintiff's subjective symptoms, the ALJ acknowledged Plaintiff's allegations that her lupus, inflammatory arthritis, and diabetes cause her to experience

8

swelling in her joints and extremities. (R. 36.) The ALJ further recognized Plaintiff's testimony that she can lift no more than ten pounds with her right hand/upper extremity due to pain, that she can stand for no more than 10-15 minutes, and was unable to wear shoes due to swelling in her right ankle. (R.36.)

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). "Patently wrong" means that the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all the ALJ's reasons must be valid in a subjective symptom analysis, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

The ALJ accepted Plaintiff's allegations as somewhat supported by the evidence, but not to the extent alleged. (R. 39.) Importantly, he did recognize that she experienced some pain, swelling, and reduced range of motion from her impairments. To that end, the ALJ rejected the opinion of state agency medical consultant Prasaad Kareti, M.D. that Plaintiff had no physical limitations and the opinion of state agency examining

9

doctor Julie Kogan, M.D., that Plaintiff had minimal or no limitations, including with her right extremity. (R. 38.)

Despite finding that Plaintiff did have severe impairments, the ALJ reasonably explained why he found Plaintiff's allegations about the severity of her symptoms not entirely credible. He considered Plaintiff's daily activities, the reliable opinion of Dr. Madala, Plaintiff's minimal treatment – including the fact that she did not take medication – and all of her treatment records. He noted that Plaintiff reported improved symptoms on various occasions, walked with a normal gait, and exhibited nearly full strength in her extremities, with the exception of some weakness in her right hand. (R. 36-37.) The ALJ's consideration of these factors in evaluating Plaintiff's symptoms was entirely proper under the regulations, 20 C.F.R. § 404.1529(c), and not patently wrong.

Next, substantial evidence supports the ALJ's determination that the opinion of Plaintiff's treating nurse practitioner, Celestia Nielsen, APN, was not persuasive. APN Nielsen opined that Plaintiff was limited to sitting for no more than 30 minutes at a time, standing for no more than 10 minutes, sitting/standing/walking for a total of four hours in an eight-hour workday, and would need unscheduled 10-15 minute breaks every two hours. (R. 664-67.) The ALJ found that this opinion was unsupported by the medical record, which did not show evidence Plaintiff experienced frequent flare-ups of her lupus. (R. 39.) Moreover, the opinion was inconsistent with examination findings showing that Plaintiff had a normal gait and her ability to perform all activities of daily

10

living. (*Id.*) While Plaintiff contends that these reasons were "perfunctory," she offers no evidence the ALJ missed. Instead, her argument again amounts to nothing more than a disagreement with the way the ALJ weighed the evidence.

      **B.**      **The ALJ Properly Relied on the Vocational Expert's Testimony.**

Plaintiff held two previous jobs with Goodwill Industries. (R. 76.) She testified that in one of these jobs, she served food, "[l]ike putting meals in trays." (R. 55-56.) The vocational expert classified this job as "food service worker," Dictionary of Occupational Titles ("DOT") code 319.484-010. (*Id.*) She testified that this job is light as generally performed but that Plaintiff performed it at the medium level of exertion. (*Id.*)[5] The ALJ relied on the vocational expert's testimony to find that Plaintiff was able to perform her prior job as it was generally performed. (R. 39-40.)

Plaintiff argues that the vocational expert's classification of her previous job as "food service worker" was erroneous. (Pl. Mem. at 7-8.) She points out that the DOT number describes a position in a restaurant or hotel, of which Goodwill Industries was neither. (Pl. Mem. at 8.) Further, she argues that the DOT code the vocational expert identified was an inaccurate representation of her prior job because she performed her work at the medium level. Finally, Plaintiff argues that her work at Goodwill was a composite job for which no DOT code accurately applied. Plaintiff is mistaken.

---

[5] The vocational expert also testified about a second job Plaintiff performed at Goodwill Industries that is not at issue here.

DOT code 319.484-010 is formally titled "food tray assembler."[6] And while the title does state that the job is performed in hotels and restaurants, it also includes work preparing meal trays for "industrial caterers, or educational, and similar institutions." Plaintiff does not dispute that Goodwill Industries' mission is job training, which reasonably falls within the job's description. And although the vocational expert found that Plaintiff performed her past job at the medium level, Plaintiff does not disagree that the job is light as generally performed in the national economy. Indeed, Plaintiff acknowledges that at Step Four, the ALJ must find that Plaintiff can perform her prior job either as she actually performed it *or* as generally performed. (Pl. Mem. at 8.)

Finally, although Plaintiff suggests that her job was actually a composite position, she offers no argument or evidence in support. *See, Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments ... are waived.") (citing *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Indeed, Plaintiff agrees that the vocational expert properly found that she performed two different jobs, completely independent of each other. At the hearing, Plaintiff's attorney did not question the vocational expert's characterization of her prior jobs and thus waived the issue. *Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023). Therefore, substantial evidence supported the ALJ's determination that Plaintiff was able to perform her past job as a food service worker as it was generally performed in the national economy.

---

[6] https://occupationalinfo.org/31/319484010.html

C. **The ALJ Did Not Need to Include Mental Limitations in the Residual Functional Capacity.**

Finally, the ALJ did not err by omitting from the residual functional capacity any consideration for Plaintiff's mild limitations in concentration, persistence, and pace. "[T]here is no requirement that restrictions from non-severe impairments must be included in the RFC assessment." *Lionel L. v. King*, 2025 WL 446150, at *5 (N.D. Ill. Feb. 10, 2025) (citing *Felts v. Saul*, 797 F. App'x 266, 268-70 (7th Cir. 2019)).

Plaintiff argues that the ALJ should have accounted for her mild limitations in concentration, persistence, and pace in the residual functional capacity. (R. 13.) She argues that the ALJ should have accepted the opinions of the state agency psychological consultants, who found that Plaintiff had severe mental impairments that would cause her to have trouble recalling and following complex directions. (Pl. Mem. at 14.) But the ALJ explained that he found the state agency opinions unpersuasive. Specifically, the ALJ noted that the opinions were unsupported by the consultative examiner, who noted that Plaintiff had no significant learning difficulties, and inconsistent with Plaintiff's own testimony that she has no difficulty learning. (R. 39.)

When considering Plaintiff's mild limitations in concentration, persistence, and pace as part of the Paragraph B analysis, the ALJ acknowledged Plaintiff's self-reports of impaired concentration and her difficulty with serial 7's at one examination. (R. 33.) Against that, the ALJ balanced Plaintiff's ability to perform activities such as driving and household chores and managing her finances and organization tasks. (*Id.*)

Moreover, the ALJ noted that Plaintiff reported being able to maintain attention for 30 minutes at a time and having no difficulty following written and spoken instructions. (*Id.*)

Plaintiff does not identify any specific mental accommodations that she contends should have been encompassed in the RFC. In sum, this is not a case where the ALJ failed to "explicitly rate the degree of Claimant's functional limitation in each of the four paragraph B categories," *see Kathy A. v. Kijakazi*, 2022 WL 2758001, at *3–5 (N.D. Ill. July 14, 2022), nor did the RFC portion of the ALJ's analysis fail to "include any discussion of the non-severe impairments." *Brandon D. v. O'Malley*, 2024 WL 4449965, at *3–4 (N.D. Ill. Oct. 9, 2024). In short, Plaintiff's argument is an invitation to reweigh evidence that was expressly considered by the ALJ rather than a circumstance where the Court is unable to discern the ALJ's reasoning for not including mental limitations in the RFC. *Rosemarie A. v. Dudek*, No. 22 C 4668, 2025 WL 1222652, at *8–9 (N.D. Ill. Apr. 28, 2025)

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to affirm the ALJ's decision (Dkt. 15) and denies Plaintiff's motion seeking to remand. (Dkt. 10.) **SO ORDERED.**

                  **ENTER:**

                  *Laura K. McNally*

                  **LAURA K. MCNALLY**

                                                                        **United States Magistrate Judge**

**DATED: <u>6/12/2025</u>**

Case: 1:22-cv-06387 Document #: 23 Filed: 06/12/25 Page 15 of 15 PageID #:1332